## Case No. 12,001.

### In re ROGERS.

[1 Lowell. 423; [1] 3 N. B. R. 564 (Quarto, 139).]

District Court, D. Massachusetts. Feb., 1870.

BANKRUPTCY — DISCHARGE — OBJECTIONS — WHAT
CONSTITUTES A TRADESMAN.

1. The bankrupt act [of 1867 (14 Stat. 517)] does not refuse to discharge a debtor merely because he has misused and wasted his estate. Nor because he has made fraudulent purchases.

2. A clerk who had within a few months before his bankruptcy, bought a carriage, a harness, a sleigh, two pairs of horses, and some cigars, and had sold them again, but who had shown no intention to trade generally, and had not bought for the purpose of selling again: held, not a tradesman within section 29, and not bound to keep books of account.

In bankruptcy.

F. W. Kittredge, for creditors.
A. W. Boardman, for bankrupt.

LOWELL, District Judge. The evidence relied on in support of the objections to the bankrupt's discharge is found in his examination in the cause, and this shows a reckless waste and extravagance in expenditure, and a disregard of the just rights of creditors. The bankrupt appears to be a salesman or drummer for a manufacturer, with a fair salary, and within six or seven months

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

of the date of his petition he had run in debt for horses and carriages, and borrowed money to an amount which, for him, was considerable. He kept no books, and is not able to give any details of his expenses, though he says, in general terms, that he used all the money in living and in paying other debts. The first specification of the objecting creditor is that the bankrupt caused and permitted the loss, waste, and destruction of his estate and effects, and misspent and misused the same, setting out the items. And it requires no forced construction of the evidence to find this charge to be sustained. But there is no such objection to a discharge to be found in the bankrupt act, unless the loss, &c., occurred after the filing of the petition. Every kind of fraud is carefully prohibited, but not extravagance or waste, except gaming. The statute may be supposed to be framed upon the presumption that men will not give credit to spendthrifts. I may wish the law were otherwise, but I cannot say that under any fair interpretation of it the first specification, though sustained, is a good ground in law to prevent the bankrupt's discharge.

The second and third charges are not pressed. They are too vague to require or admit of testimony in their support, and none was given. The fourth avers that [W. M.] Rogers was a tradesman, and kept no books of account. It is true that he kept no books. Was he a merchant or tradesman? He appears to have sold most of the goods and chattels for which he had contracted debts, namely, one carriage, one sleigh, two pairs of horses, one piano, one harness, and part of a lot of cigars. It is doubtful whether, in most cases, he intended to sell them at the time he bought. For example, one pair of the horses ran away with him and broke the sleigh, and he sold them; he used a part of the cigars and sold a part. Giving the evidence its full effect, and drawing the most favorable inferences for the creditors, the instances of trading, such as I have mentioned, would not exceed five. And as to those, it may be said that the purpose was to sell the goods if he should find it necessary. But I do not find that he ever formed the deliberate purpose of buying to sell again in order to raise money. Such conduct might be within the mischief and possibly within the letter of the act, though a trader, generally speaking, is one who buys in order to sell for a profit. So might an amount of trading, however small, connected with an intent to deal generally. Ex parte Magennis, 1 Rose, 84. But this bankrupt does not appear to have considered himself a trader, or to have held himself out as such, or to have been so considered by others. If the acts he did make him a tradesman, any single act of buying and selling must have that effect; for they were isolated and separate acts, having no connection with each other, and showing no intention to set up

any trade. He bought goods which he could use and did use, and when he was pressed for money, or even to put the worst construction on his conduct, when he contemplated bankruptcy, he sold them. If any sale were fraudulent, or if any preferences were given, or any property or money kept concealed, he would be fully within the act. If such things were done they have not been proved, and upon the point now before me, I must say that the evidenece does not sustain the charge.

Another specification sets up a buying of goods when the debtor knew he could not pay for them; and another, a fraudulent buying of a piano. Neither of these is within the act. The frauds which prevent a discharge are nearly all such as tend to the injury of creditors generally. One who has been induced by fraudulent representations to sell goods to the bankrupt, finds his remedy in the right to receive a dividend and to hold the remainder of his debt undischarged by the certificate. I have held that any fraud on the act may be given in evidence, including all that are mentioned in section 44; and in that section will be found one or two possible frauds which may affect only a part of the creditors, but neither of them is set up in this case.

I am constrained to say, that in my opinion, the discharge must be granted upon payment by the bankrupt of the fees mentioned in the eighth specification, which are not disputed, and which the assignee has. no funds to meet.